OSCAR ZOLLIKOFFER, APPELLANT, *v.* WILLIAM F. HAVEMEYER, MAYOR, AND OTHERS, RESPONDENTS.

*Chap.* 161, *Laws of* 1872 — *Advertisements for proposals* — *Bids* — *when to be rejected.*

The defendants, under the provisions of section 73, chapter 335, Laws of 1873, advertised for proposals for lighting the city with gas. All the gas companies, except the New York Mutual Gas-Light Company, were bound by agreement among themselves, not to lay pipes or furnish gas in any part of the city, except that allotted to it under the terms of such agreement. The Mutual Company offered to light the lamps in streets in which its mains had been laid, which streets constituted a portion of the area allotted to the Metropolitan Gas Company by the said agreement, at thirty-five dollars per lamp, per annum, and was awarded a contract to do so. Proposals were made by the Metropolitan Company, which were rejected for irregularities in the bids. Their proposal was thirty-seven dollars, per lamp, per annum, if the contract was awarded for all the public lamps in their district, and thirty-nine dollars if it was for a portion only. On a readvertisement for proposals for that portion of the district not awarded to the Mutual, the contract was given to the Metropolitan for thirty-three dollars, per lamp, per annum.

By the terms of the advertisement, the proposals were to be opened at noon, and the performance of the contract to commence on the same night. The proposals of the Mutual were accompanied by a letter, asking the contract to be modified, by adding thereto, "Provided sufficient time is given this company to make the necessary connection," as they had not then connected their mains with the lamps. In an action brought to restrain the defendants from executing the contract with the Mutual, *held*, that the proposal was not irregular, because of the proviso added to it, and that the contract was properly awarded to this company. That the subsequent bid of the Metropolitan Company, of thirty-three dollars per lamp, was not to be employed to the prejudice of the defendants, or either of them. It was a subsequent transaction, and one which they were not bound to anticipate.

APPEAL from an order made at Special Term, denying a motion for an injunction to restrain the mayor, comptroller, and commissioners of public works, from executing a contract with the Mutual Gas-Light Company, to light some of the street lamps in New York.

*Aug. F. Smith,* for the appellant.

*Geo. P. Andrews,* for the respondents.

BRADY, J. :

The plaintiff, as a tax-payer, commenced this action under and by virtue of the act of 1872,* which provides that all officers, agents, commissioners and other persons acting for and on behalf of any county, town or municipal corporation in this State, and each and every of them, may be prosecuted, and an action maintained against them, to prevent waste or injury to any property, funds or estate of such county, town or municipal corporation, by any person residing in such county, town or municipal corporation, assessed for, and liable to pay taxes therein, or who has paid taxes therein within one year previous to the commencement of any such action or actions. The facts and circumstances which prompted it are as follows : The defendants Havemeyer, Green and Van Nort, under the provisions of section 73, chapter 335, of the Laws of 1873, advertised for proposals for lighting the city with gas. That section authorizes the commissioner of public works, in conjunction with the mayor and comptroller, to contract for lighting the streets, avenues and places with gas, containing a prohibition, however, against any arrangement or agreement with any company or companies for such purpose, for a period longer than a year at any one time, or for an amount in excess of the sum appropriated therefor. In answer to a proper advertisement, proposals were received from the several gas companies of the city, which, with the exception of the New York Mutual Gas-Light Company, by agreement among themselves, were bound not to lay pipes or furnish gas in any part of the city, except that allotted to it under the terms of such agreement. The New York Mutual Gas-Light Company was awarded a contract for lighting the lamps in streets which were within the area allotted to the Metropolitan Gas Company, of which the plaintiff is, and for several years has been, the president. Proposals were made by that company for the streets covered by the contract mentioned, but were rejected for irregularities in the bids. Their proposal was thirty-seven dollars per lamp, per annum, provided the contract was awarded for all the public lamps in their district, and thirty-nine dollars per annum for each lamp, if the contract was only for a portion of the public lamps in that district. It must be borne in mind, that, by

* Chap. 161, vol. 1, p. 467.

the operation and effect of the mutual agreement and consequent allotment of districts, the companies concerned could not compete with each other, and that the only competitor, as a result of that arrangement, was the New York Mutual Company who were not confined to any district, or bound by any allotment. The proposal of the Mutual Company was thirty-five dollars per lamp, per annum, where its mains had been laid, but, inasmuch as they were not laid entirely in districts covered by the Harlem and Metropolitan Companies, it became necessary to readvertise for proposals as to that part of the city, and within the districts of the Harlem and Metropolitan, respectively, for which a contract could not be awarded to the Mutual, its mains not having been laid therein. The subsequent bid of the Metropolitan was thirty-three dollars per lamp, per annum, but that of the Harlem, the same as before, namely, thirty-nine dollars per lamp, per annum; and there being no competition — no lower bidders — the proposals were necessarily accepted, being regular in form.

The Mutual Company had not, however, up to the first of January, 1874, and consequently not at the time of its bid, made the necessary connections between its main pipe and the city lamps, and therefore their proposals were accompanied by a letter from its president, saying on behalf of his company, that, under a strict construction of the first clause of the proposal, it was physically impossible (as the proposals were to be opened at noon, and the performance of the contract to commence on the same night) for any company, other than those who were then furnishing the gas, to bid successfully, and asking therefore, the interpolation of the following sentence: " provided sufficient time is given his company to make the necessary connection;" the object being to enable them to establish the necessary connection between the main pipes and the lamps, which they had not then accomplished, as already stated. This statement of facts and circumstances, is sufficient to make the objections urged intelligible. These objections are,

1st. That the proposal was irregular, because of the proviso recited, and

2d. That the subsequent bid for thirty-three dollars per lamp, per annum, made by the Metropolitan upon the readvertisement,

demonstrates that the whole district could have been lighted for thirty-three dollars per lamp, per annum, involving a saving to the city, of the difference between that sum and the amount per lamp which was to be paid to the Mutual Company for the light to be furnished by them.

The question presented is the value of the objections, either or both. The ordinances of the common council, in reference to the manner in which contracts shall be made by the persons to whom the duty·is assigned, contain many provisions, some of which are matters of form, and not of substance. They relate to the box called the estimate box, in which the bids are to be placed, and provide for an opening in the top of the box; keeping the box locked, except at such times as it may be necessary to open it for the purpose of examining the bids; and that the key must be retained by the head of the department, etc. It is also declared by them, that all bids which are not made in conformity to the ordinances, shall be rejected, etc.* The object of these ordinances, so far as they relate to the box and its privacy, is to prevent the bidder from ascertaining what his competitor, if any, has done, and thus compel him to make his proposals independently of all others. The object of the declaration, that all bids which do not conform to the demands, shall be rejected, does not mean a literal, but substantial, compliance with the requirements. It does not mean mere matters of form, but of substance, unless the matters of form are so blended with those of substance that they cannot be separated. It will be perceived that the proviso objected to, is not a defect in form or substance, in regard to the ordinances. It is the addition of something which in no way affects the service to be rendered, but the time only when such service was to begin. It was not founded upon any fancied advantage to be derived from its interpolation, but for the purpose of enabling the contracting parties to do what was indispensably necessary, to enable them to perform the contract which they were willing to make. If it was a departure from the strict, literal terms of the advertisement and the ordinances, which is doubtful, it was not from the spirit of either; the sole purpose and object of which was to obtain for the city, from responsible persons, a contract upon the best possible terms. It did not limit the obligations

---

* Rev. Ord., pp. 187 to 201.

of the company, other than to give them a reasonable time to prepare, and that reasonable time was afterward shown to be fourteen days, in which period they could accomplish all that was necessary. The statute authorizes an action to prevent waste or injury to any property, funds or estate of the corporation. In what respect does the interpolation of the proviso bring this case within its provisions? What waste or injury, in any respect, would result from it? In order to consider these questions, it is necessary to understand the circumstances existing when the proposals were opened. The Metropolitan Company had bid thirty-seven dollars, conditionally, per lamp, as their lowest price, and the Mutual Company thirty-five dollars per lamp. There were no other competitors, and could not be, for the other companies were bound to abstain from bidding. The object of such an understanding is readily understood. The defendants intrusted with the power of awarding the contract, saw at once, that there would be a saving of from two to four dollars per lamp, for each lamp embraced in the contract given to the Mutual Company, and, as to the balance of the lamps in the district, they would be compelled to accept from the Metropolitan Company the bid they might make on a readvertisement. The compulsion would arise from the combination for allotment, which had been carried out by agreement between the companies other than the Mutual, as already stated. The defendants named were not required to speculate upon the probability of a bid from the Metropolitan Company, more favorable than that which they had already made. The Metropolitan Company had declared, that if any part of their district was given to another company, their price would be thirty-nine dollars per lamp, and thirty-seven dollars per lamp if their contract embraced it all. The obstacle in the way of making the better contract at the time, was the proviso by which sufficient time was to be given the Mutual Company to make the necessary connection. Its adoption could, in no way, operate injuriously to the city or its interests. The Mutual Company could make no charge until the gas was furnished, and the delay would have been only fourteen days. It would be a very erroneous construction of the ordinances, or of the effect of the proviso in the proposals, to hold that the facts and

circumstances considered, established a case within the statute of 1872. There is no pretense of collusion, fraud or bad faith. There is no pretense of evil design or willful departure from prescribed duties, and there is no evidence, from which the conclusion should be drawn, that any other than a proper consideration of the public interests, influenced the defendants mentioned, in awarding the contract to the Mutual Company. There is no pretense that that company had any sinister designs, or that they were influenced in making the bid with its proviso, from any other than a fair spirit. of competion, alike of advantage to them and the corporation. What they asked, was a necessity, but it was not to the prejudice of the people, but, with the then existing facts of which mention has been made, was for the benefit of the city. It may, indeed, be claimed, that to have rejected the proposal, would have been to place the whole subject under the control of the Metropolitan Company, by rejecting all competition. It must also be said, that the difference between the proposals to be made, in their literal sense, and those in fact made, is too unimportant to warrant the restraint sought to be imposed. The abuse should be substantial, if not designed. It is neither. The objection to the proviso is technical, perhaps. It may be so regarded, in the absence of all suggestions of evil intended, or resulting from its acceptance. It is clear, however, that its adoption was justified by existing facts and circumstances, in the consideration of which, it is important to bear in mind the competitors and the covenants that bound them to assist, and not to interfere with each other.

In the view thus expressed, of this controversy, it is apparent that the second proposal of the Metropolitan Company, of thirty-three dollars per lamp, is not to be employed to the prejudice of the defendants, or either of them. It was a subsequent transaction, and one which they were not, nor was either of them, bound to anticipate. Whatever rights were enjoyed, or obligations imposed, at the time the proposal of the Mutual Company was accepted, are to be invoked, and no other, in determining the propriety of sustaining this action. None of these warrant our interference, and we think the order appealed from should be affirmed.

DAVIS, P. J., and DANIELS, J., concurred.

Order affirmed.